IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : Case No. 1:13-CR-12 (WLS) |
| STEWART PARNELL *et al*, | : |
| | : |
| Defendant. | : |

## ORDER

Before the Court is the United States of America's Motion to Inquire into Conflict of Interest. (Doc. 57.) With the benefit of a hearing, the Court finds that Defendant Stewart Parnell knowingly and voluntarily waived his attorney's potential or actual conflict.

## PROCEDURAL and FACTUAL BACKGROUND

Defendant Stewart Parnell is the former president of Peanut Corporation of America ("PCA"). He and his codefendants' alleged actions in connection with PCA is the subject of a seventy-six-count indictment for conspiracy, wire fraud, obstruction of justice, and introducing misbranded and adulterated food into interstate commerce with intent to defraud.

The instant matter involves defense counsel Kenneth Hodges' purported conflict of interest between his current client, Stewart Parnell, and his former clients, Grey and Stewart Adams. Grey and Stewart Adams are married. Grey Adams is Stewart Parnell's daughter, who, for many years, worked at PCA's corporate office in Lynchburg, Virginia. According to the Government, Grey Adams performed accounting and various other

1

services for PCA. Stewart Adams provided IT services and informal consulting to Parnell, his father-in-law.

The alleged conflict is this: During the investigation into PCA's activities, the Grand Jury issued subpoenas for Grey and Stewart Adams. The Adamses retained Hodges, who informed prosecutors his clients were willing to be interviewed. The interview occurred in Washington, D.C., at the Department of Justice, with Hodges present. Either through an agreement or a decision by the Government, the Adamses were ultimately released from their subpoenas and never appeared before a grand jury.

Although neither Grey nor Stewart Adams was indicted in this case, the Government maintains it may call them as prosecution witnesses. The Government cannot say for sure whether it will call the Adamses to testify, only that it is a possibility. Furthermore, per the Government, Grey Adams is an unnamed party in several of the factual allegations in the Indictment. Grey Adams, for example, is the "PCA Official" in Paragraph 19 of the overt acts of the conspiracy who suggested via e-mail that employees hose off totes of meal covered with rat feces to fill a customer order. She allegedly also received an e-mail from Michael Parnell, another defendant, who said a customer could receive a "generic" Certificate of Analysis, a document that certifies the peanuts for the absence of certain microbiological content.

Anticipating an objection to Parnell's representation, Hodges filled a memorandum regarding the issue on February 28, 2013. He also filed a declaration for himself, Stewart Parnell, Grey Adams, and Stewart Adams. In his declaration, Hodges represents he spoke with Parnell and the Adamses regarding the potential conflict and its impact on cross-examination. Grey and Stewart Adams note they did in fact speak with Hodges and do not believe his prior representation is a conflict and, if it is, they

waive it. (Docs. 38, 39.) In Parnell's declaration, he "asserts" his Sixth Amendment right to counsel of his choice, "knowingly and voluntarily" waives any possible conflict, and believes Hodges' representation will enhance his defense. Parnell also retained two attorneys from a different firm in Roanoke, Virginia.

The Court held a "*Garcia*" hearing April 22, 2013 to discuss the conflict with Parnell and the Adamses. After argument from counsel, the Court heard from Parnell about whether he wanted to retain Hodges and understood the potential consequences of doing so. The Court explained how Hodges had a duty to his former clients to preserve their confidences and that he could not disclose their communications. Further, the Court told Parnell that Hodges may not be able to effectively cross-examine the Adamses. Parnell said his lead counsel was Thomas Bondurant and that Hodges would help on a local level. Parnell consulted Bondurant regarding Hodges' conflict. Furthermore, during argument, an attorney from Hodges' firm indicated Bondurant could cross-examine the Adamses. Parnell said he still wanted to retain Hodges and did not have additional questions. The Court also informed Grey and Stewart Adams of the conflict, and each indicated they did not object to the representation.

## DISCUSSION

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI. The Supreme Court has held that Sixth Amendment's right to counsel encompasses the right to counsel of one's choice. *Wheat v. United States*, 486 U.S. 153, 159 (1988). "It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *United States v.*

*Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006). Defendants have a presumptive right to counsel of their choice, and courts must hesitate before disqualification. *United States v. Ross*, 33 F.3d 1507, 1522–23 (11th Cir. 1994).

The Sixth Amendment also guarantees the right to conflict-free counsel. *Glasser v. United States*, 315 U.S. 60, 75 (1942). The enforcement of that guarantee falls, in the first instance, with the defense attorney. *See Holloway v. Arkansas*, 435 U.S. 475, 485–86 (1978). A defense attorney has a professional and constitutional duty to zealously represent his or her client free from competing loyalties and unencumbered by outside interests. *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980). But "[u]pon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. . . . The trial court should protect the right of an accused to have assistance of counsel." *Glasser*, 315 U.S. at 71. When a potential or actual conflict of interest arises, the trial court has a duty to inquire further. *Wood v. Georgia*, 450 U.S. 261, 272 (1981).

A court may allow a defendant to proceed to trial with an attorney who has an adverse interest when the defendant waives his right to conflict-free counsel. *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993). The waiver must be knowing and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). The record must show (1) the defendant was aware of the conflict, (2) realized the conflict could affect the defense, and (3) knew of his right to obtain other counsel. *United States v. Petz*, 764 F.2d 1390, 1393–40 (11th Cir. 1985); *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975). "A defendant's waiver must be established by 'clear, unequivocal, and unambiguous language." *Rodriguez*, 982 F.2d at 477 (quoting *Garcia*,

517 F.2d at 276). In each case, a defendant's intelligent waiver will depend on all relevant circumstances, "including the background, experience, and conduct of the accused." *Id.*

After a review of the record, the Court finds Parnell has knowingly and voluntarily waived his right to conflict-free counsel. Consistent with *United States v. Garcia*, the Court held a hearing with Parnell and his attorneys, personally and forthrightly advised him of the potential dangers of the conflict, gave Parnell an opportunity to freely question the Court, and sought detailed responses from him about the nature of the representation. *See* 517 F.2d at 278. Parnell is a sophisticated businessperson who admitted, at the *Garcia* hearing, to having had detailed interactions with the legal system.

Parnell's knowledge of the conflict and realization of its consequences is well evinced from the record. Before Hodges began his representation of Parnell, he informed Parnell of his previous representation of Grey and Stewart Adams, the possible impact on the Adamses' cross-examination, and the advisability of obtaining independent legal counsel. Parnell chose to hire Hodges anyway. Parnell also executed a declaration waiving his right to conflict-free counsel. He spoke with Hodges and an independent attorney, Thomas Bondurant, about the conflict. During the *Garcia* hearing, the Court explicitly informed Parnell of the potential consequences of Hodges' divided loyalties—the requirement Hodges preserve his former clients' confidences and his potential inability to effectively cross-examine his former clients—and Parnell indicated he understood these problems and wanted to waive his right in spite of them.

The record also indicates Parnell understood he could obtain other independent counsel, because he in fact retained two other defense attorneys from an unaffiliated

5

firm and hired Hodges despite knowledge of the previous representation. *See Cone v. United States*, No. 8:10-cgv-1975, 2012 WL 2505752, at *12 (M.D. Fla. Jun. 12, 2012) ("[The Defendant] knew he had the right to obtain other counsel, because he had other counsel already assigned to him."). As already mentioned, Parnell also spoke with his independent attorney regarding the conflict.

These facts suffice to establish Parnell's knowing and voluntary waiver. Because the Court, in its discretion, accepts this waiver, it need not determine whether Hodges has an actual or potential conflict. *See Rodriguez*, 982 F.2d at 477 ("A determination that defendants have waived the right to conflict-free counsel disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflicts of interest.").[1] The Court therefore **DENIES** the Government's motion to disqualify Hodges to the extent requested or anticipated.

## CONCLUSION

For those reasons, the Court **OVERRULES** the Government's objection (Doc. 57) to Hodges' representation, and finds that Parnell knowingly and voluntarily waived his right to object to Hodges' potential or actual conflict.

**SO ORDERED**, this ___30th___ day of May 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**

---

[1] As previously noted, however, the essential limitation of Hodges to effectively cross-examine his previous clients in Parnell's best interest were discussed in detail at the hearing.