IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 1:13-cr-12 (WLS) |
| | : | |
| STEWART PARNELL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

The United States moves to exclude the expert testimony of Dr. Joseph Conley, a psychologist proffered by Defendant Stewart Parnell. For the reasons that follow, the Court finds that the testimony is inadmissible and will exclude it.

### I.   Procedural background

Defendant Stewart Parnell is charged in a seventy-six-count, fifty-two-page indictment arising from the sale of salmonella-contaminated peanuts at the Peanut Corporation of America (PCA). Parnell was the CEO of PCA. The indictment alleges, among other things, that he defrauded PCA's customers by falsifying Certificates of Analysis, which certified peanut products for the absence of harmful microbiological content, and by fraudulently shipping peanut products that did not meet customer specifications.

The case is before the Court on the Government's motion to exclude the testimony of Dr. Joseph Conley. Parnell designated Dr. Conley, a neuropsychologist, as an expert witness to testify during the Defendant's case-in-chief "regarding Mr. Parnell's functional deficiencies, including [attention deficient hyperactivity disorder], and their impact on his professional life and their interplay with any criminal allegations." The Government moved for a *Daubert* hearing, asserting that the testimony is inadmissible because it would not help the trier of fact. The Government argued that "[i]t is . . . difficult to fathom that Defendant Stewart Parnell was so stricken and

1

confused by this apparently never before diagnosed attention deficit disorder that he could not formulate the intent to defraud his customers."

In response, Parnell tried to reframe the issue by claiming he was offering neither a diminished capacity nor a justification defense. Instead, Dr. Conley's testimony "will be offered to show that Stewart Parnell did not commit the crimes alleged because he never factually acquired the knowledge necessary to form any intent about the actions alleged by the government." More specifically, Parnell claimed that Dr. Conley will establish "that it is highly unlikely that [he] would have read, much less appreciated, the potential import of the communications that the Government's case hinges upon."

Dr. Conley's neuropsychological evaluation reported the following. After a battery of tests, Parnell tested positive for attention deficit hyperactivity disorder (ADHD). The evaluation found that Parnell exhibited common symptoms of ADHD—for example, as his wife reported, he had drive to complete certain action, restlessness, distractibility, inattentiveness, and avoidance of things he deems uninteresting. Dr. Conley concluded that the test results showed Parnell to be impulsive, easily distractible, and evinced "impaired self-monitoring, impaired volition, and impaired executive planning ability." From these and other findings, Dr. Conley found that, while Parnell coped well with the disorder as a salesman, "it is likely that, being thrust, for the first time, into the role of an executive, . . . he lacked both the experience and executive neurocognitive capacity to function at this level." "Clearly, with such deficits in executive functioning," Dr. Conley concluded, "Mr. Parnell was and remains cognitively incapable of fielding, delineating, organizing, and integrating the daily plethora of phone calls and E-mails required in managing three companies." These results, however, were "incomplete" until Dr. Conley reviewed additional information from medical records, family members, and tests to rule out malingering. According to Dr. Conley, a supplemental report completed the evaluation after additional interviews and testing.

The Court held a *Daubert* hearing on March 13, 2014. At the hearing, Parnell reiterated that Dr. Conley's testimony "is not designed to defeat specific intent," but rather shows Parnell likely did not acquire the knowledge given to him in the

indictment. On direct examination, Dr. Conley explained his tests and testified that Parnell's diagnosis made it less likely he would create a scheme to defraud customers and that it adversely affected his ability to read and understand e-mails. According to Dr. Conley, the disorder also made it more likely Parnell would respond to subordinates in aggressive ways, by, say, upbraiding them instead of responding constructively to their questions. On cross-examination, Dr. Conley admitted that, during his initial evaluation, he did not review any e-mails associated with this case, was unaware how many e-mails Parnell actually received, and did not review medical records or information from Parnell's childhood. He also testified that people with ADHD could focus on things they found important, such as the discovery of salmonella on food, and that nothing about ADHD causes people to make false statements or eliminates one's intent to defraud.

At the hearing, The Government called Dr. David J. Schretlen, a neuropsychologist with the John Hopkins University School of Medicine. In a pre-hearing report, Dr. Schretlen evaluated Dr. Conley's conclusions and opined that they would be unhelpful to the jury and were based on insufficient facts and data and used unreliable principles and methods. Dr. Schretlen noted that the cognitive tests did not show that Parnell was incapable of understanding e-mails and, to the contrary, his e-mail responses suggested he could grasp the details and the significance of the correspondence. On the evaluation's facts and data, Dr. Schretlen noted that Dr. Conley did not document evidence that Parnell's ADHD emerged during childhood, a diagnostic criterion under the *Diagnostic and Statistical Manual of Mental Disorders: DSM-5*. The report also explained that Dr. Conley appeared to have replaced the DSM-5 formulation with his own diagnostic criteria and did not exclude alternative explanations from his results. Dr. Schretlen reiterated these findings during the hearing.

After the *Daubert* hearing, the Parties briefed the admissibility of Dr. Conley's testimony. The Court now finds the testimony inadmissible.

## II. Discussion

Having reviewed the record, evidence, and briefing, the Court holds that Dr. Conley's testimony is inadmissible under the Federal Rules of Evidence. Federal Rule

of Evidence 702 provides that expert testimony must help the trier of fact understand the evidence or determine a fact at issue. Fed. R. Evid. 702. A defendant must show there is "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579, 591–92 (1993). In other words, there must be a "fit" between the proffered evidence and the disputed facts of the case. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

Under *Daubert*, a district court must conduct a "rigorous" analysis of scientific evidence to ensure it is relevant and assists the trier of fact. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). A district court must be particularly vigilant when a criminal defendant offers psychiatric or psychological evidence. *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990). "Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury[] from focusing on the actual presence or absence of *mens rea,* and (3) 'may easily slide into wider usage that opens up the jury to theories of defense more akin to justification,' . . . district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, 'support a *legally acceptable* theory of lack of *mens rea.*'" *Id.* (citations omitted).

In analyzing the "fit" between specific intent and psychiatric evidence, courts require a defendant to establish a link between the evidence and the *mens rea* at issue. *Cameron*, 907 F.2d at 1067; *United States v. Boykoff*, 186 F. Supp. 2d 347, 349 (S.D.N.Y. 2002). So, for example, in *Cameron*, the Eleventh Circuit upheld a district court's exclusion of evidence of a defendant's schizophrenia in a drug prosecution because the defendant failed to show how the illness negated intent to distribute cocaine. 907 F.2d at 1067. And in *Boykoff*, a case similar to this one, the Southern District of New York excluded evidence of attention deficient disorder where the indictment, like here, included "allegations, not simply of errors, but of deliberate misconduct, including fabrication of documents and subornation of perjury." 186 F. Supp. 2d at 349.

In this case, Parnell has likewise failed to demonstrate the link between his ADHD and the *mens rea* at issue. Parnell claims he will not offer Dr. Conley's testimony

4

to negate specific intent but rather to show he did not "factually acquire" the knowledge alleged in the indictment. This explanation is a distinction without a difference. Semantics aside, Dr. Conley's testimony is a diminished capacity defense designed to show that Parnell did not form an intent to defraud customers. But that testimony is unhelpful to the jury. The allegations in this case involve a complex scheme to defraud and allegations of willfulness—not errors and mistakes in processing "the daily plethora of calls and e-mails required in managing three companies." As Dr. Conley admitted, nothing about ADHD means Parnell could not intend to defraud customers. To the contrary, as Dr. Conley reported, Parnell was perfectly capable of transforming PCA from a money-losing operation to a business with gross sales of $30 million.

Moreover, Dr. Conley's report and testimony revealed he had surprisingly little knowledge of the actual allegations in this case. While willing to opine that Parnell was "incapable" of integrating his daily phone calls and e-mails, Dr. Conley admitted he had no idea how many calls or e-mails Parnell received. He likewise had little, if any, knowledge of the e-mails central to this case. When asked on cross-examination about the contents of the e-mails he had reviewed, Dr. Conley was unable to recall even basic details. The Court took a fifteen-minute recess to allow him to refresh his recollection, and still Dr. Conley faltered and could not testify about the knowledge Parnell allegedly did or did not acquire. The testimony is unhelpful and lacks a link with the allegations in this case.

And even if Dr. Conley's testimony would be otherwise relevant and admissible under Rule 702, it would remain inadmissible under Rule 403. Under that rule, a court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing of the issues, or misleading the jury. Fed. R. Evid. 403. Because psychiatric evidence "may slide into wider usage that opens up the jury to theories of defense more akin to justification," a district court must examine such evidence carefully. *Cameron*, 906 F.2d at 1067 (quoting *United States v. Pohlot*, 827 F.2d 889, 904–05 (3d Cir. 1987)). The probative value of Dr. Conley's testimony is at best slight, while the danger he will venture into legally inadmissible theories is great. Dr.

5

Conley spends a large part of his report discussing Parnell's impulsivity, his impaired self-monitoring, and his inability to adapt or change his behavior. This type of evidence bears more on "affirmative defense psychiatric evidence" than evidence to negate specific intent. Because Congress sought to prohibit such evidence under the Insanity Defense Reform Act, it is inherently misleading and confusing. *See id.* at 1066–67.

Dr. Conley's testimony is therefore inadmissible.

### III.  Conclusion

For those reasons, the Court holds that Dr. Conley's testimony is inadmissible and is therefore **EXCLUDED**.

**SO ORDERED**, this  24th   day of June, 2014.

　　　　　　　　　　　　　　  /s/ W. Louis Sands
　　　　　　　　　　　　　　**W. LOUIS SANDS, JUDGE**
　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**