IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: 1:13-cr-12 (WLS) |
| | : | |
| STEWART PARNELL, MICHAEL PARNELL, and MARY WILKERSON | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

Pending before the Court are the Government's Ominbus Motion in Limine (Doc. 155), the Government's Motion in Limine to Introduce Evidence of Routine Microbiological Testing under FRE 803(6) (Doc. 156), Stewart Parnell's Motion in Limine (Doc. 157), and Mary Wilkerson's Motion in Limine (Doc. 159).

**I.      Procedural Background**

Defendants Stewart Parnell, Michael Parnell, and Mary Wilkerson are charged in a seventy-six-count indictment arising from the sale of salmonella-contaminated peanuts at the Peanut Corporation of America (PCA). The Defendants are charged with various offenses, including conspiracy, introduction of adulterated food into interstate commerce with intent to defraud or mislead, interstate shipments fraud, wire fraud, and obstruction of justice.

In preparation for the trial in this case, the Parties filed motions in limine. The Court heard argument on the motions June 24, 2014. The Court grants the Motion in Limine to Introduce Evidence of Routine Microbiological Testing and denies the rest of the motions.

1

## II. Discussion

### a. Government's Omnibus Motion in Limine

In its first Motion in Limine, the Government seeks an Order excluding from trial (1) defendants' statements if offered by the defendants and (2) evidence of "subsequent remedial measures" federal and state entities took in response to the salmonella outbreak. The Court denies the motion without prejudice.

#### i. *Defendants' statements if offered by defendants*

Although all parties appear to agree that self-serving statements offered by a defendant are generally inadmissible hearsay, (*See* Doc. 155 at 3; Doc. 175 at 1 (citing *Williamson v. United States*, 512 U.S. 594, 600 (1994)), the Defendants oppose the Government's motion because out-of-court statements require context to adjudicate admissibility. The Court agrees. In general, courts are "handicapped in any effort to rule on subtle evidentiary questions outside a factual context." *Luce v. United States*, 469 U.S. 38, 41 (1984). This is particularly true for potential hearsay statements, which often fit a hearsay exception or can be offered for reasons other than the truth of the matter asserted. Without testimony and evidence to provide factual context, a ruling on the Government's motion would be premature. Likewise, the Government failed to demonstrate that such statements would be so prejudicial as to warrant a prophylactic measure requiring a time-consuming proffer each time such a statement is elicited. For those reasons, the Court finds that this part of the motion is premature and will deny it without prejudice.

#### ii. *Subsequent remedial measures*

Next, the Government seeks to exclude evidence about actions federal and state agencies took in response to the salmonella outbreak. The Government argues such evidence is inadmissible as "subsequent remedial measures" under Federal Rule of Evidence 407. By its plain terms, Rule 407 prohibits the use of subsequent remedial measures to prove negligence, culpable conduct, a defect in a product or design, or a need for warning or instruction. Fed. R. Evid. 407. Parnell, however, claims he intends

2

to introduce such evidence not to demonstrate the Government's negligence or culpable conduct but rather to show the absence of industry standards at the time of the alleged offenses, which is pertinent to whether he had intent to defraud. So, while Parnell's evidence may be inadmissible on some other ground, it is not because the evidence is a subsequent remedial measure.

In its reply brief, the Government argued for the first time that the evidence is irrelevant under Rule 401. Again, because the Court does not know and cannot predict how the Defendants will present the subject evidence, a ruling on relevance would be premature. Besides, the Government introduced the argument in its reply brief, and this Court does not review arguments raised for the first time in a reply brief. *Tindall v. H & S Homes, LLC*, No. 5:10-cv-044, 2011 WL 5007827, at *2 (M.D. Ga. Oct. 20, 2011).

This portion of the motion is also denied without prejudice.

### b. Government's Motion in Limine to Admit Evidence of Routine Microbiological Testing under FRE 803(6)

In its second motion in limine, the Government moves to admit evidence of microbiological testing records from two sources: (1) private laboratories that performed tests at the request of PCA or its customers and (2) federal and state agencies that tested PCA's products and facility to determine the source of the 2008–2009 salmonella outbreak. The Government argues these test records are routine business records that do not implicate the Confrontation Clause. The Court will grant the motion.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause prohibits introduction of "[t]estimonial statements of a witness who did not appear at trial" unless "the declarant is unavailable" and the "defendant has had a prior opportunity to cross-examine." 541 U.S. at 59. Only "testimonial" statements implicate the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 821 (2006).

3

A statement is "testimonial" if its primary purpose is to establish or prove past events relevant to criminal prosecution. *Id.* at 822; *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2714 n.6 (2011). On the other hand, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822.

Whether a statement arose during an "ongoing emergency" is an objective inquiry requiring a court to "evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011). So, for example, the Supreme Court has held that a victim's statements to a 911 operator during a domestic violence call were nontestimonial because they were a "call for help against a bona fide physical threat" made "as [the events] were actually happening," and "were necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past." *Davis*, 547 U.S. at 827. And the Court held that a mortally wounded victim's statements were nontestimonial "where an armed shooter, whose motive for and location after the shooting were unknown, had mortally wounded [the declarant] within a few blocks and a few minutes of the location where the police found [the declarant]." *Bryant*, 131 S. Ct. at 1164. Thus, the "ongoing emergency" extended "beyond an initial victim to a potential threat to the responding police and the public at large." *Id.* at 1156.

After a review of the objective circumstances in this case, the Court concludes that both categories of microbiological testing records are nontestimonial. Documents in the first category of microbiological testing results were produced at the request of PCA or its customers. Thus, unlike every post-*Crawford* Supreme Court case finding a Confrontation Clause violation, the records were produced at the request of private entities, not law enforcement. *See, e.g.*, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308 (2009). PCA ordered microbiological testing for quality assurance and to meet customer specification. At the time these records were produced, no criminal prosecution or investiga-

tion existed. Thus, the objective circumstances of these records show they served a primary purpose other than to establish or prove past events for a criminal prosecution.

The microbiological testing records produced by federal and state entities during the salmonella outbreak present a closer question. The Court is persuaded, however, that the primary purpose of those records was to address an ongoing emergency. After all, when federal and state regulatory agencies responded to the PCA facility, they were tasked with ending or at least mitigating a deadly salmonella outbreak sweeping across the country. Testing PCA's products and facility was critical to locate and isolate the infected food. Both Stewart Parnell and the Government agree that salmonella is a dangerous, even deadly, substance. And because PCA distributed its allegedly tainted products nationwide, the emergency in late 2008 and early 2009 was massive in significance and scale. Indeed, the Government claims the salmonella sickened more than 700 and killed nine.

Moreover, the Government represents, and the Court possesses nothing to show otherwise, that the agencies' efforts at this stage were purely regulatory. During the initial testing, the Government had yet to begin a criminal investigation. Law enforcement did not direct, request, or oversee the microbiological testing. Law enforcement did not participate in the initial investigation. The FDA's Atlanta branch conducted its testing separate and apart from the FDA's Office of Criminal Investigations.

Rather than addressing the Government's analysis head-on, Michael Parnell, in a response adopted by his codefendants, argues that "[b]oth the private laboratory records and the records from federal and state agencies are testimonial because they are offered for the truth of the matter asserted." (Doc. 172 at 2.) He restates and reiterates this argument several times. Doing so, Parnell misstates the law on the Confrontation Clause by conflating the definition of hearsay with the definition of testimonial. The Supreme Court has repeatedly explained that the two are distinct. *Davis*, 547 U.S. at 821 ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."); *Bryant*, 131 S. Ct. at 1155; *see also Crawford*, 541 U.S. at 51, 55,

5

68. Only *testimonial* hearsay statements implicate the Confrontation Clause. *Davis*, 547 U.S. at 821. Having considered Parnell's other arguments, the Court finds them similarly unpersuasive.

Therefore, the Court will grant the Government's motion. But the Court will require the Government to satisfy the necessary foundation to introduce business records and will revisit these rulings if necessary.

### c. Stewart Parnell's Motion in Limine

Parnell moves to exclude (1) evidence of salmonella illnesses or death; and (2) an e-mail the Government offers as Rule 404(b) evidence. Parnell argues evidence of salmonella evidence or death is inadmissible as irrelevant, as impermissive opinion testimony, and because its probative value is outweighed by undue prejudice. On the 404(b) evidence, Parnell asserts the e-mail does not establish motive or intent because it is not rationally related to the charges in the indictment.

### i. *Evidence of Salmonella illnesses*[1]

The Court denies Parnell's motion as to the evidence of salmonella illnesses. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant direct evidence of a crime charged is always admissible unless it falls under a rule of exclusion." *United States v. Troya*, 733 F.3d 1125, 1130 (11th Cir. 2013) (citing *United States v. Rice*, 214 F.3d 1295, 1299 (11th Cir. 2000)). Furthermore, intrinsic evidence—that is, evidence not part of the crime charged but pertaining to the chain of events explaining context, motive, and set-up of the crime—is admissible if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *Id.* (quoting *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)). Evidence is "inextricably intertwined" if it forms an "integral and natural part of the witness's ac-

---

[1] The Government represented during the hearing that it would not introduce evidence of deaths resulting from salmonella poisoning. Therefore, the Court will address only evidence of salmonella illnesses.

counts of the circumstances surrounding the offenses for which the defendant was indicted." *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989).

The evidence of salmonella illnesses is admissible as both direct evidence and as intrinsic evidence. The evidence is directly relevant for at least three independent reasons. First, the Government must establish beyond a reasonable doubt for Counts 3 through 22 that peanut products were "adulterated," meaning they bore or contained a "poisonous or deleterious substance which may render it injurious to health." 21 U.S.C. § 342(a)(1). Evidence that PCA shipped peanut products that sickened consumers tends to prove the food was in fact adulterated with salmonella and that salmonella is a poisonous substance. Second, the Government must prove that PCA shipped its peanut products into interstate commerce to establish the misbranding, adulteration, and interstate shipment fraud counts. Evidence that consumers across the country became ill from PCA products directly shows those products entered interstate commerce. Third, and finally, evidence of salmonella illnesses is directly relevant to show the existence of an FDA investigation or "proceeding" giving rise to the obstruction of justice counts.

In addition, evidence of salmonella illnesses is inextricably intertwined with the crimes indicted in this case. The salmonella outbreak and ensuing illnesses provides context to the offenses and explains how and why government agencies began the investigation that led to PCA and the defendants. Without that information, the jury would be invited to speculate about the background to the prosecution.

Parnell claims that the evidence of salmonella illnesses, even if relevant, is inadmissible under Rule 403. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992) (citation omitted).

7

In this case, the likelihood of confusion or the prejudicial effect of introducing evidence of salmonella illnesses does not substantially outweigh its probative value. As direct evidence of several offenses, the evidence of salmonella illnesses carries substantial probative value. And while it is true that the Government may prove its case through alternative evidence, and that the Court may consider alternatives during the Rule 403 calculus, *see Old Chief v. United States*, 519 U.S. 172, 183 (1997), the disputed evidence here has "multiple utility," *id.* at 190. In addition to serving as direct evidence, the evidence of salmonella illnesses completes the overall narrative in this case by illustrating the context and background for the investigation. No stipulation or bill of lading will provide that evidentiary richness. Besides, whatever prejudicial effect may result from such evidence can be mitigated by a cautionary instruction. *Fortenberry*, 971 F.2d at 721. And to the extent Parnell claims the evidence presents a special risk because this "has been a highly politicized and highly emotional case," the Court and the parties are well equipped to remove jurors predisposed to bias against the defendants through voir dire.

Evidence of salmonella illnesses is therefore relevant and not unduly prejudicial.[2] This part of the motion is denied without prejudice.

    ii.    *404(b) evidence*

Both the Government and Stewart Parnell appear to agree that a ruling on the admissibility of the 404(b) evidence would be premature until evidence develops at trial. (Doc. 179 at 15; Doc. 186 at 10.) Therefore, the Court denies without prejudice this portion of the motion and will address the e-mail's admissibility if the Government offers such evidence at trial and Parnell objects to it.

---

[2] The Court does not address Parnell's argument that the evidence will amount to impermissible opinion testimony. Whether evidence of salmonella illness amounts to impermissible opinion testimony depends on how the Government introduces such evidence and whether the testimony or evidence offers an opinion. Because the Court does not know the Government will try to prove the existence of salmonella illnesses, this argument is premature.

### d. Mary Wilkerson's Motion in Limine.

Mary Wilkerson moves to exclude "any memorandum, recording, video or testimony" concerning Count 73, which charges her with obstruction of justice, on the ground that the Government failed to produce a written memorandum or transcript of the statements giving rise to that count. Without specifying her precise arguments, Wilkerson claims that she "would rely upon Rule[s] 16 [and 26.2] of the Federal Rules of Criminal Procedure . . . *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Skilling*, 554 F.3d 529, 576–77 (5th Cir. 2009), and *Giglio v. United States*, 405 U.S. 105 (1972), and any and all other statutory or case law as set out in her previously filed Motions, including but not limited to, the Jencks Act to which the Government has not complied." The Government argues that it already produced the Memorandum of Interview reflecting Wilkerson's statements and that it does not possess transcripts because no audio or video recordings exist.

Wilkerson has not established a violation of any of the rules, statutes, or case law she purports to invoke. Wilkerson has not presented evidence the Government withheld information implicating *Brady, Giglio,* or Rule 16. Nor has she explained how the Jencks Act or Rule 26.2, both of which pertain to witnesses "other than the defendant," entitles her to her own statements. *See* 18 U.S.C. § 3500(a); Fed. R. Crim. P. 26.2(a). Even if the Jencks Act and Rule 26.2 did apply to a defendant's statements, there would be no violation here because a motion to produce will not lie until after the witness has testified on direct examination. *See* 18 U.S.C. § 3500(b); Fed. R. Crim. P. 26.2(a). Finally, to the extent Wilkerson relies on *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2896 (2010), for the proposition that *Brady* requires the Government to identify exculpatory documents in voluminous discovery, she has also failed to establish a violation. Unlike this case, the Government in *Skilling* gave the defendant access to "several hundred million pages of documents." 554 F.3d at 576. Yet the Fifth Circuit rejected the defendant's *Brady* challenge because there was no evidence the Government acted in bad faith in producing its file, which was "electronic and searchable" and included indices for reference. *Id.* at 577. In this case, like in *Skilling*, the

9

Government made its discovery electronic and searchable, provided indices to Wilkerson, and even directed her to the CD/DVD where she could find the relevant Memorandum of Interview. There is no evidence of bad faith.

For those reasons, Wilkerson's motion is **DENIED**.

### III.   Conclusion

Having considered the record, briefings, and arguments raised in the motions to adopt/join, the Court rules as follows:

- the Government's Omnibus Motion in Limine (Doc. 155) is **DENIED** without prejudice;
- the Government's Motion in Limine to Admit Evidence of Routine Microbiological Testing (Doc. 156) is **GRANTED**;
- Stewart Parnell's Motion in Limine is **DENIED** (Doc. 157) without prejudice;
- Mary Wilkerson's Motion in Limine (Doc. 159) is **DENIED**.

Further, to the extent adopted by other co-defendants, the foregoing rulings are the same for each defendant.

**SO ORDERED**, this ___7th___ day of July, 2014.

                                                    _/s/ W. Louis Sands_
                                                    **W. LOUIS SANDS, JUDGE**
                                                    **UNITED STATES DISTRICT COURT**