IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : CASE NO.: 1:13-CR-12 (WLS) |
| STEWART PARNELL, | : |
| MICHAEL PARNELL, and | : |
| MARY WILKERSON, | : |
| | : |
| Defendants. | : |

# ORDER

Defendants Stewart Parnell, Michael Parnell, and Mary Wilkerson move to exclude the expert testimony of Dr. Ian Williams. The Court held a *Daubert* hearing on September 2, 2014. For the reasons that follow, Defendants' motion to exclude Dr. Ian Williams' expert testimony is **DENIED**.

### I.   Procedural background

Defendants Stewart Parnell, Michael Parnell, and Mary Wilkerson are charged in a seventy-six-count, fifty-two-page indictment arising from the sale of salmonella-contaminated peanuts at the Peanut Corporation of America ("PCA"). The case is before the Court on Defendants' motion to exclude the expert testimony of Dr. Ian Williams. In its April 23, 2013 scheduling order, the Court ordered the Government to provide all discovery and expert witness notices by June 17, 2013. On June 11, 2014, however, the Government disclosed Dr. Williams as an expert witness. Following a hearing on various motions, the Court found that exclusion of Dr. Williams as an expert was not warranted on the basis of the late disclosure. Subsequently, Defendants requested a *Daubert* hearing on eight of the Government's expert witnesses. Because that request was untimely, the Court denied the request for all witnesses save Dr. Williams. The request was granted as to Dr. Williams because his disclosure was late. The Government was ordered to give two days' notice before calling Dr. Williams to testify. The Government gave that notice on Friday, August 29, 2014, and the Court held a *Daubert* hearing on Tuesday, September 2, 2014.

## II. Dr. Williams' expected testimony

At the *Daubert* hearing, Dr. Williams' testified that he intends to testify that PCA was the source of the 2008-2009 salmonella outbreak. He bases that opinion on the following information. Dr. Williams is the Chief of the Outbreak Response Branch of the Centers for Disease Control and Prevention ("CDC") in Atlanta, Georgia. Dr. Williams' group coordinates the public health response to multistate bacterial outbreaks in the United States.

Pulsed-field gel electrophoresis ("PFGE") is a laboratory DNA test that identifies unique characteristics of different strains of bacteria. PFGE is a well-established technique that is standardized and easily conducted. The PFGE process is conducted by running a sample through a testing device that produces an image of multiple lines. The lines represent the "fingerprint" of the tested strain of bacteria. The PFGE image can be compared to other test results by trained analysts to determine whether two samples contain the same strain of bacterium. The image is saved as a TIFF file, and that file is uploaded onto PulseNet. PulseNet is an electronic network that contains images of PFGE samples obtained from patients at hospitals and doctors' offices, as well as images uploaded by governmental agencies. PulseNet has been in operation approximately twenty years and contains about 500,000 human samples.

Dr. Williams' Outbreak Response Branch is responsible for investigating bacterial outbreaks. Most of that group's work involves salmonella. Around November 2008, Dr. Williams' team learned that 166 people had been hospitalized with salmonella-related illnesses.[1] For salmonella-related illnesses, the CDC assumes that thirty unreported cases exist for each reported case. For that reason, Dr. Williams considered the referenced hospitalizations an indication of a salmonella outbreak. Dr. Williams' team found that two similar types of Salmonella Typhimurium had infected salmonella patients and therefore concluded that the salmonella was likely from the same or related source. At that time, Dr. Williams' team was tasked with identifying the source of the salmonella outbreak.

Dr. Williams began an investigation and sent to infected individuals questionnaires that involved a series of questions. The investigation focused on three major pillars of evidence. The first pillar is epidemiological evidence. That pillar of evidence involves the iden-

---

[1] Certain illnesses, including illnesses related to salmonella, must be reported by treating physicians, hospitals, etc. The illnesses are reported to local and state health institutions, which in turn report to the CDC.

2

tification of the people involved, similarities among their past actions and behaviors, and their demographics, geographic locations, and general health conditions. The second pillar is trace-back evidence. That pillar involves trying to identify a common source of infection among the group of infected people. The third pillar involves testing of foods from the patients' homes.

Based on the evidence collected, Dr. Williams' team concluded that peanut butter and peanut products were the likely source of the outbreak. In each of the facilities affected by salmonella, King Nut peanut butter was found. King Nut peanut butter was traced back to the PCA facility in Blakely, Georgia. Samples taken by FDA inspectors from PCA facilities were compared to samples taken from suspected food items and infected individuals. Dr. Williams' team found that the PFGE patterns from those samples matched. For those reasons, Dr. Williams concluded that PCA was the source of the outbreak. After the recall of PCA products, over the next few months, the number of salmonella-related illnesses returned nearly to zero. That decline in salmonella-related illnesses confirmed to Dr. Williams that PCA was the source of the outbreak.

Dr. Williams and his team published the results of their investigation in the Journal of Internal Medicine. Their findings were based on test results uploaded to PulseNet which were obtained by doctors, FDA employees, and other scientists. Reliance on test results obtained by other people is customary in Dr. Williams' field. Because the CDC responds to multistate outbreaks and ongoing emergencies, it would be impracticable for Dr. Williams' team to personally take samples from all affected individuals.

### III. Analysis

Defendants stipulate that Dr. Williams is an expert and that PFGE is an accepted scientific method in his field. However, Defendants object to testimony that (1) illnesses were caused by salmonella because such testimony would be prejudicial and violate the Confrontation Clause, and (2) for each one reported illness, there was likely an additional thirty unreported cases because Dr. Williams did not design that multiplier and whoever designed it cannot be cross-examined.

#### A. Testimony of illnesses caused by salmonella

Defendants' argument regarding the exclusion of testimony of illnesses caused by salmonella hinges on two legal theories. First, Defendants argue that the probative value of

3

testimony that people were sickened by salmonella is substantially outweighed by unfair prejudice to Defendants.  The Court has already ruled, however, that evidence of salmonella illnesses is relevant and not unduly prejudicial.  (*See* Doc. 203.)  Defendants believe that Dr. Williams' testimony would be just as effective without mention of illnesses caused by salmonella.  However, collection of samples from the sick individuals and the trace-back evidence that linked PCA to the outbreak is extremely probative.  Information as to how the CDC determined there was a salmonella outbreak, why it made that determination, and how the outbreak was traced to PCA would help the jury in determining whether Defendants knowingly or intentionally introduced adulterated food products into interstate commerce.  Because the proposed testimony goes directly to elements of the charged offenses, the testimony is extremely relevant.  For those reasons, the Court finds that Rule 403 does not favor exclusion of the referenced testimony.

Second, Defendants argue that Dr. Williams' testimony regarding salmonella-related illnesses would violate the Confrontation Clause.  As noted above, Dr. Williams intends to testify that he used information gathered by doctors, hospitals, and infected individuals on their questionnaires to form his belief that the salmonella outbreak originated with PCA.  Defendants contend that the Confrontation Clause bars Dr. Williams' reliance on information gathered by other people because Defendants will be deprived of the opportunity to cross-examine those who made the relevant statements or conducted the relevant tests. For the reasons that follow, the Court finds that the referenced testimony would not violate the Confrontation Clause.

Federal Rule of Evidence 703 provides that an expert may base an opinion on facts or data "perceived by or made known to the expert at or before the hearing."  If the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible" for the opinion to be admitted.  Fed. R. Evid. 703.  Under Rule 703, Dr. Williams may base his opinion on reports compiled or statements made by nontestifying people as long as the reports and statements are of a type reasonably relied upon by experts in the relevant field.  Dr. Williams testified that experts in his field necessarily and reasonably rely on test results obtained by doctors, hospitals, and scientists, and questionnaires filled out by infected individuals, because of the nature of investigating multistate bacterial outbreaks in connection with estab-

4

lished and accepted standard reporting and testing procedures. That testimony remains unchallenged. As such, under Rule 703, Dr. Williams' testimony is appropriate.

The Confrontation Clause, however, is not necessarily satisfied simply because testimony is appropriate under Rule 703. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. As noted by Michael Parnell at the *Daubert* hearing, there is a "split" on the issue of whether the Confrontation Clause allows an expert to base his testimony on reports or opinions of nontestifying individuals. The "split" refers to the lack of a majority opinion in *Williams v. Illinois*, 132 S. Ct. 2221 (2012).[2] *See United States v. Turner*, 709 F.3d 1187, 1189 (7th Cir. 2013) ("the divergent analyses and conclusions of the plurality and dissent [in *Williams*] sow confusion as to precisely what limitations the Confrontation Clause may impose when an expert witness testified about the results of testing performed by another analyst, who herself is not called to testify at trial").

Writing for the *Williams* plurality, Justice Alito held that "[o]ut-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which [his] opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Williams*, 132 S. Ct. at 2228. Under the plurality's approach, Dr. Williams' expected testimony would not violate the Confrontation Clause. Dr. Williams relied on the above-referenced test results and questionnaires for the purpose of identifying the source of the salmonella outbreak. Dr. Williams is testifying about the referenced reports and statements only to explain the foundation for his opinion that the salmonella outbreak originated at PCA facilities. The out-of-court statements are not being offered for their truth and, according to the *Williams* plurality, therefore fall outside of the purview of the Confrontation Clause.

As a "second, independent basis" for the plurality's decision in *Williams*, the plurality found that an expert's reliance on a nontestifying witness' out-of-court statements does not violate the Confrontation Clause where the statement is nontestimonial in nature. *Williams*, 132 S. Ct. at 2228; *see also Davis v. Washington*, 547 U.S. 813, 821 (2006). Under that reasoning, Dr. Williams' anticipated testimony would not violate the Confrontation Clause because

---

[2] In at least one unpublished opinion, the Eleventh Circuit treated the plurality's opinion as binding on that Court. *See United States v. Murray*, 540 F. App'x 918, 921 (11th Cir. 2013).

5

the reports and statements he relied upon to form his opinion were not testimonial. A statement is "testimonial" if its primary purpose is to establish or prove past events relevant to criminal prosecution. *Davis*, 547 U.S. at 822; *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2714 n.6 (2011). Statements are nontestimonial, however, where the primary purpose of the statements was to respond to an ongoing emergency. *Davis*, 547 U.S. at 822. Whether a statement arose during an "ongoing emergency" is an objective inquiry requiring a court to "evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011). Here, there is no indication that the CDC or FDA collected or analyzed any samples in preparation for a criminal prosecution. Instead, all actions taken by those agencies at the relevant time period were in response to an ongoing emergency, i.e. a salmonella outbreak. Under the *Williams* plurality approach, Dr. Williams' proposed testimony would not violate the Confrontation Clause because the out-of-court statements upon which Dr. Williams relies are not offered for their truth *and* are nontestimonial.

Due to the fragmented nature of the *Williams* opinion, the Court will not end its analysis there. Justice Kagan's dissent points out that five justices "specifically reject[ed] every aspect of [the plurality's] reasoning." *See Williams*, 132 S. Ct. at 2265. In *Williams*, an expert testified that a vaginal swab of a rape victim contained the defendant's DNA. *Id.* at 2267. The individual who took the vaginal swab and conducted the DNA test did not testify. *Id.* Justice Kagan and three other justices would have held that, for the purposes of the Confrontation Clause, a nontestifying person becomes a witness against another when the substance of the nontestifying person's report or statement is introduced. *Id.* at 2268. Justice Kagan's concern in *Williams* is clearly inapplicable to this case. The individuals who filled out questionnaires, and the people who conducted tests and generated reports, all of which were relied upon by Dr. Williams, are not testifying through Dr. Williams. The substance of the questionnaires and reports are not being placed before the jury. Those documents were relied upon by Dr. Williams to trace the salmonella outbreak to PCA but, at least to the Court's knowledge at this point, there is no indication that Dr. Williams will attempt to place nontestifying persons' testimonial or accusatory statements before the jury. Additionally, there is direct evidence in the record regarding testing at PCA from the relevant and necessary witnesses to the same.

Lastly, the Court notes that, under Justice Thomas' approach,[3] Dr. Williams' reliance on out-of-court statements would not violate the Confrontation Clause because there is no indication that the reports or infected individuals' statements contained the "requisite 'formality and solemnity' to be considered 'testimonial' for purposes of the Confrontation Clause." *See Williams*, 132 S. Ct. at 2255. As such, it appears that Dr. Williams' anticipated testimony would pass muster under each of the proposed tests from *Williams*.

In summary, this case is much different from the *Williams* facts which resulted in a fragmented Supreme Court opinion. In *Williams*, the Supreme Court grappled with finding an answer to the primary question presented by the Confrontation Clause: What does it mean to be a witness against another person in the context of an expert's reliance on nontestifying witnesses' out-of-court statements? In that case, an expert was permitted to testify about a test result that directly implicated the defendant in a rape case without calling the person who conducted the test and obtained the result. Whether that type of apparent circumvention of the Confrontation Clause is permissible following *Williams* is a question not presented by this case. Here, Dr. Williams' opinion is clearly based on the reports and statements of nontestifying persons. However, none of the referenced tests and statements, so far as the Court understands, directly implies the guilt of any Defendant. The validity of Dr. Williams' opinion is tied to the method and science as he utilized them and, as such, is fully subject to the scrutiny of cross-examination. None of the statements by nontestifying declarants will be placed before the jury. For those reasons, the Court concludes that Dr. Williams' proposed testimony does not offend the Confrontation Clause.

### B. Testimony regarding multiplier

Defendants contend that Dr. Williams should not be permitted to testify that the CDC assumes that thirty unreported cases of salmonella-related illness exist for each reported case of salmonella-related illness. Defendants support that contention by stating that Dr. Williams did not design the referenced multiplier and the person who did design it cannot be cross-examined. Based on the same analytical framework described above, however, the Court concludes that testimony regarding the multiplier does not violate the Confrontation Clause. The truth of the CDC's referenced assumption is not at issue, nor is any characteris-

---

[3] In *Williams*, Justice Thomas concurred in the judgment only and "share[d] the dissent's view of the plurality's flawed analysis." *Williams v. Illinois*, 132 S. Ct. 2221, 2255 (2012).

tic or attribute of the person who designed that assumption. The referenced assumption is only important to the extent that it indicates why the CDC considered the circumstances in November 2008 to indicate that a salmonella "outbreak" was occurring. Otherwise, the jury could be confused as to why 161 salmonella-related hospitalizations triggered the investigation by the CDC. For that reason, the Court finds that the Confrontation Clause is not implicated by testimony relating thereto.

## CONCLUSION

For the foregoing reasons, Defendants Motion to Exclude Dr. Ian Williams' Expert Testimony is **DENIED.**

**SO ORDERED**, this  5th  day of September 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE
UNITED STATES DISTRICT COURT**