IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | :   CASE NO.: 1:13-CR-12 (WLS) |
| STEWART PARNELL, | : |
| MICHAEL PARNELL, and | : |
| MARY WILKERSON, | : |
| | : |
|     Defendants. | : |
| | : |

## ORDER

      Before the Court is Defendant Mary Wilkerson's August 30, 2015 Motion to Dismiss Count 73 of the Indictment, and, in the Alternative, Motion for a New Trial. (Doc. 446.) Defendant Stewart Parnell has moved to adopt that Motion to the extent it applies to him. (Doc. 451.) The Government filed a response to Wilkerson's Motion on September 8, 2015, which it intended to be a response to Stewart Parnell as well should his Motion to Adopt be granted. (Doc. 454 at 1, n. 1.) Wilkerson filed a reply on September 11, 2015. (Doc. 461.)

      Also, Stewart and Michael Parnell have filed a Motion to Exclude Victim Testimony from Sentencing (Doc. 455). Wilkerson also filed a Motion to Exclude Victim Testimony from Sentencing and a Motion to Adopt Stewart and Michael Parnell's Motion to Exclude Victim Testimony. (Doc. 460.) The Government filed a response on September 14, 2015, which it intended to be a response to Wilkerson's Motion as well should her Motion to Adopt be granted. (Doc. 464 at 1, n. 1.) The Court herein addresses the pending Motions (Docs. 446, 451, 455, 460).

**I.**     **Stewart Parnell's Motion to Adopt Wilkerson's Motion to Dismiss the Indictment and, in the Alternative, Motion for a New Trial (Doc. 451)**

      Defendant Stewart Parnell's Motion to Adopt (Doc. 451) is **DENIED-IN-PART** as to Wilkerson's Motion to Dismiss Count 73 of the Indictment because Stewart Parnell does not have standing to dismiss Count 73 of the Indictment since he was not charged in Count 73. (*See* Doc. 1 at 50.) Stewart Parnell's Motion to Adopt (Doc. 451) is **GRANTED-IN-**

1

**PART** as to Wilkerson's Motion for a New Trial; however, the Motion for a New Trial (Doc. 446) is **DENIED** for reasons set forth herein.

**II.    Wilkerson's Motion to Dismiss the Indictment and, in the Alternative, Motion for a New Trial (Doc. 446)**

Wilkerson and Stewart Parnell were indicted on February 15, 2013. On September 19, 2014, Wilkerson was convicted of one count of Obstruction of Justice (Count 73), and Stewart Parnell was found guilty of all but one of the sixty-eight counts with which he was charged. Stewart Parnell and Wilkerson are scheduled to be sentenced on September 21, 2015. Wilkerson has previously filed two Motions to Dismiss the Indictment (Docs. 223, 387), both of which have been denied by the Court. (Docs. 232, 397.)

The instant motion, like Wilkerson's previous one (Doc. 387), asserts that Wilkerson was prejudiced by the Government's "data dump" of millions of documents (Doc. 447 at 6) and that documentation relevant to the main witness against Wilkerson was "hidden" within the "data dump" such that Wilkerson's *Brady* and *Giglio* rights were violated. (*Id.*) Specifically, Wilkerson asserts that Count 73 of the Indictment is deficient because not all of the allegations, which Wilkerson asserts were based upon notes from a page of FDA Investigator Janet Gray's diary, were proven at trial. (*Id.* at 5-6.) Wilkerson also asserts she was prejudiced because she was unable to locate before or during trial the transcripts of FDA/FBI interviews of Wilkerson and Raymond Kimbrel within the Government's "data dump." (Doc. 447 at 8-9.) Next, Wilkerson argues that she was prejudiced because she was not provided the original diary entry so that she could seek forensic analysis of it. (*Id.* at 6.)

Further, Wilkerson alleges that the Government has provided the news media, specifically Food Safety News, with sealed information from the record of this case. (*Id.* at 10-12.) Also, Wilkerson appears to renew her request for authorization of payment for trial transcripts. (*Id.* at 13-15.) And Wilkerson asserts, "The Government has either not provided or hidden the medical records of the more than 700 alleged victims in order to prevent a review, rebuttal and cross examination of victim impacts which the Government may utilize for Sentencing Enhancement without being Tried before a Jury." (*Id.* at 17.) Finally, Wilkerson argues that it is possible that the victims who have submitted victim impact statements could have been sickened by a ConAgra peanut product rather than a Peanut

2

Corporation of America peanut product since ConAgra also allegedly had a salmonella outbreak in its Sylvester, Georgia facility during the time period spanned by the Indictment in the above-styled case. (*Id.* at 18-19.)

### III. Mary Wilkerson and Stewart Parnell's Motion for a New Trial

First, the Court notes that the Motion for a New Trial, just like Wilkerson's previous Motion for a New Trial, is substantially late. (*See* Doc. 397 at 24.) The Court gave the Defendants ten days after the November 12, 2014 sealed hearing to file supplemental briefs to support the Defendants' respective motions for new trial. *See also* Fed. R. Crim. P. 29 & 33. August 28, 2015 is significantly past the referenced deadline.[1] While Rule 33(b)(1) allows a motion for new trial based on new evidence to be filed within three years after a verdict, neither Wilkerson nor Stewart Parnell proffer any new evidence meriting a new trial. Rather, Wilkerson and Stewart Parnell's Motions refer only to evidence that was disclosed by the Government during discovery and evidence that was introduced at trial. (Docs. 454 at 5-7; 454-1; 454-2; 454-3; *see also* Docs. 447, 451.) Since it was not timely filed, the Motion for a New Trial (Doc. 446) is **DENIED** as to Wilkerson and Stewart Parnell, who has adopted it.

Second, the Court again finds that Wilkerson was not prejudiced by the Government's disclosure of voluminous documentation. (*See* Doc. 397 at 24.) To establish violations of *Brady v. Maryland*, 373 U.S. 83 (1963), or *Giglio v. United States*, 405 U.S. 150 (1972), the Defendants must cite to the particular evidence that the Government kept from them. Here, Wilkerson freely admits that she was provided the needed evidence but claims that she was prevented from locating it. (Doc. 447 at 16 ("Wilkerson was unable to locate the vital exculpatory evidence prior to Trial for her Defense on Count 73[] since it was deliberately buried as unindexed documents in millions of unorganized documents produced by the Government . . . ."); *Id.* at 8 ("This 'Transcript' of Wilkerson's interview did not have a Bates Number assigned to it and could not be searched or located through use of Concordance Software as it was so well hidden in the massive data dump . . . ."); *Id.* at 9.) The Court still disagrees. Throughout the course of this case, Wilkerson has moved for and was granted multiple continuances due to the volume of evidence produced by the Government. Wilkerson

---

[1] The Court found that Wilkerson's previous Motion for a New Trial, filed on April 2 and 3, 2015, was untimely. (Doc. 397 at 24.) This Motion, filed nearly five months later, is even more so, but Wilkerson provides no explanation for or acknowledgment of her untimeliness.

3

was provided with software to comb through the evidence and the services of a computer technician to help use that software. Her technician provided Wilkerson with 268 hours of technical services. Because Wilkerson was granted multiple continuances and provided software and technical services to use such software, the Court cannot conclude that she was in any way prejudiced by the Government's production of voluminous discovery.

Furthermore, because Wilkerson has not shown good cause for filing her Motion to Dismiss the Indictment after the trial and because Wilkerson's Motion to Dismiss the Indictment does not assert that Count 73 of the Indictment fails to state an offense or invoke the Court's jurisdiction, Wilkerson's Motion to Dismiss the Indictment is untimely under both the pre-December 1, 2014 version of Federal Rule of Criminal Procedure 12(b)(3)(B) and (e) and the version of Rule 12(b)(3)(B) that went into effect on December 1, 2014. *See United States v. Sperrazza*, 14-11972 at 6-13 (11th Cir. Aug. 17, 2015). For all of the reasons herein stated, Wilkerson's Motion to Dismiss the Indictment (Doc. 446) is **DENIED**.

Next, the Court is unclear what relief Wilkerson and Stewart Parnell seek in making allegations that the Government has provided the news media, specifically the website Food Safety News, with sealed contents from the record of this case. (Doc. 447 at 10-12.)  To the extent Food Safety News acquired information that was previously filed under seal as to allegations of juror misconduct, those matters have since been redacted and unsealed (Doc. 397), so any request for relief is **DENIED AS MOOT**.  The Court finds that the August 6, 2015 Food Safety News article filed by Wilkerson (Doc. 446-13) does cite to the Presentence Investigation Reports (PSRs) for Defendants Michael and Stewart Parnell.  Indeed, all presentence investigation reports include the following standard language, "It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge."  However, Wilkerson's presentence investigation report is not referenced in any of the Food Safety News articles provided by Wilkerson, and the Court is unclear what prejudice Wilkerson believes she has suffered from the disclosure of the Parnells' PSRs or what relief she seeks. And, to the extent Stewart Parnell adopts this nebulous claim, the Court is also unclear what harm he has suffered or what relief he seeks with regard to the alleged disclosure of portions of his Presentence Investigation Report. Neither Wilkerson nor Stewart Parnell can point to any concrete basis for their belief that the Government disclosed this information to Food

4

Safety News or that the information they refer to was otherwise unavailable. Besides the speculation that certain information was disclosed by the Government, neither Defendant identifies any prejudice to his or her case or defense. To the extent Wilkerson and Stewart Parnell have moved for relief in connection with the alleged disclosure of PSRs in this case, their Motion (Doc. 446) is **DENIED**.

Also, Wilkerson's apparent renewed request for authorization of payment of trial transcripts (Doc. 447 at 13-15) is **DENIED** for the reasons stated in the Court's August 25, 2015 Order. (Doc. 445.)

### III. Stewart and Michael Parnell's and Mary Wilkerson's Motions to Exclude Victim Testimony from Sentencing (Doc. 455, 460)

Finally, the Court address Stewart and Michael Parnell's and Mary Wilkerson's Motions to Exclude Victim Testimony from Sentencing. As an initial matter, the Court **GRANTS** Wilkerson's Motion to Adopt Stewart and Michael Parnell's Motion to Exclude Victim Testimony from Sentencing (Doc. 460) and will also consider any additional, related arguments raised in Wilkerson's own Motion (Doc. 460) and in her Motion to Dismiss Count 73 of the Indictment, and, in the Alternative, Motion for a New Trial (Docs. 446, 447). Stewart Parnell, Michael Parnell, and Mary Wilkerson all move to exclude victim testimony and victim impact statements from the sentencing hearing. They argue that the Government's provision of victim impact statements to them has been untimely; the individuals purporting to be victims are not "victims under the Crime Victims' Rights Act; and that the Court's consideration of the victim impact statements and victim testimony will deprive Defendants of their due process rights. (*See* Docs. 455, 460.)

Under the Crime Victims' Rights Act (CVRA), victims of crimes have the right to be present at sentencing and make statements to the Court to consider for the purpose of sentencing. 18 U.S.C. § 3771. Under the CVRA, victim statements are not considered Government evidence because they are made pursuant to victims' independent right to be heard at sentencing. 18 U.S.C. § 3771(a)(4). Defendants do not have a Confrontation Clause or due process right to cross-examine victims who exercise their right under the CVRA to testify at a sentencing hearing purely for sentencing purposes. *United States v. DeAngelis*, 243 F. App'x

471, 474-75 (11th Cir. 2007) (holding that trial court did not err in not allowing defendant to cross-examine victims who testified at sentencing hearing).

A "victim" under the CVRA is an individual who is directly and proximately harmed by a defendant's criminal behavior. 18 U.S.C. § 3771(e); *In re Stewart*, 552 F.3d 1285, 1288 (11th Cir. 2008). In order to identify whether an individual is a "victim" under the CVRA, a court must first identify the behavior constituting "a Federal offense." *Stewart*, 522 F.3d at 1288. Then the court must "identify the direct and proximate effects of that behavior on parties other than the United States" and whether those effects were reasonably foreseeable to the defendants and not too attenuated. *Id.*; *United States v. Rogers*, No. 1:09-cr-441-TWT/AJB, 2010 WL 1872855 at *7 (N.D. Ga. Apr. 12, 2010).

As an initial matter, the Court determines whether the individuals who have submitted victim impact statements and who may exercise their right to testify at the sentencing hearing are "victims" under the CVRA. First, the Court determines the behavior that constituted commission of federal offenses. Stewart and Michael Parnell were convicted of conspiring to defraud Peanut Corporation of America's (PCA) customers by shipping products before the results of microbiological testing were received; falsifying microbiological test results; and shipping product known to have tested positive for salmonella. Mary Wilkerson was convicted of obstruction of justice for telling FDA Inspector Janet Gray on January 16, 2009 that she was not working in quality assurance earlier in the year and that she was not aware of any incidents of PCA products testing positive for salmonella.

Next, the Court determines whether each Defendant's criminal behavior was the direct and proximate cause of the purported victims' harm. The Court finds as to Stewart and Michael Parnell that a reasonably foreseeable result of conspiring to ship salmonella-positive food products is that individuals who consume those products will become ill. The Court finds that the evidence presented at trial, including the testimony of Drs. Gwendolyn Anderson and Ian Williams and Charlies Deibel, linked Stewart and Michael Parnell's conduct and specifically PCA's contaminated peanut products to the victims' illnesses. The Court finds that steps taken by the CDC to link reported illnesses to the specific strain of salmonella found in PCA products, which were testified to by Dr. Ian Williams and which are succinctly outlined in the Government's response brief (Doc. 464 at 5-6), establish that Stewart and Michael Parnell's conduct was the but-for and proximate cause of the victims' illnesses. Fur-

thermore, the majority of victims who submitted victim impact statements were also determined to be victims of the PCA outbreak by the Alan Maxwell, PCA's bankruptcy claims administrator, who testified at trial to the process used to confirm that those individuals were indeed victims of the outbreak.  That there were intervening actors –here, manufacturers who added PCA peanut products to other ingredients to create food products for consumption –does not make the causal chain too attenuated.  Here, pulsed field gel electrophoresis (PFGE) analysis confirmed that each victim's stool sample culture matched the unique strain of salmonella found in PCA products; the Parnells have pointed to no evidence that any other intervening action could have caused that to be the case.  The Court, therefore, finds that the victims who have submitted impact statements and who will testify at the sentencing hearing are victims of Stewart and Michael Parnell's federal offenses who are entitled to exercise the rights and privileges afforded them by the CVRA.

With regard to the Parnells' objections regarding the timeliness of the provision of victim impact statements, the Court finds nothing in the CVRA regarding when victim impact statements should be provided to defendants.  Further, as the Court has already found, a victim's testimony is not considered Government evidence for CVRA purposes.  In providing victim impact statements to the U.S. Probation Office and the Defendants, the Government is simply relaying third parties' statements rather than proffering its own evidence.  And in relaying victim impact statements, the Government is certainly not objecting to anything in the Presentence Investigation Reports (PSRs) as the Parnells contend. (Doc. 455-1 at 3 *et seq.*)  Victim statements made under the CVRA are separate and apart from relevant conduct, victim number, loss amount, and restitution findings and recommendations contained within PSRs and are therefore not subject to Federal Rule of Criminal Procedure 32's deadlines regarding PSR preparation.  For all of those reasons, Stewart and Michael Parnell's Motion to Exclude Victim Testimony from Sentencing (Doc. 455) is **DENIED**.

Mary Wilkerson's behavior that the jury found constituted a federal offense occurred on a single date, January 16, 2009.  Wilkerson was not charged with conspiracy together with the Parnells. The Court notes that Wilkerson is accountable under the Sentencing Guidelines for the underlying offense conduct and "any specific offense characteristics that were known, or reasonably should have been known" by her, U.S.S.G. §§ 2J1.2(c), 2X3.1(a)(3)(A) cmt. n.1., but the calculation of Wilkerson's offense level under the Sentencing Guidelines

and the determination of which, if any, individuals are victims of Wilkerson's crime as defined by the Crimes Victims' Rights Act are separate and distinct determinations. The Court herein only addresses whether the individuals who have submitted victim impact statements and who desire to testify at the sentencing hearing are victims of Wilkerson's crime for CVRA purposes.

The Court finds that Wilkerson's case is similar to *United States v. Rogers*. In that case, the Northern District of Georgia found that an individual whose firearms were stolen was not a victim of the defendant. The defendant's only conviction was for being a felon in possession of a firearm. The court found no evidence linking the defendant to the theft of the firearms. The court concluded that the theft of the individual's firearms was the but-for cause of his injury, not the defendant's subsequent federal offense, which was possessing those firearms while being a convicted felon. No. 1:09-cr-441-TWT/AJB, 2010 WL 1872855 at *7 (N.D. Ga. Apr. 12, 2010).

Here, Wilkerson's offense of conviction occurred after the adulterated peanut products were shipped. While the Court does not know whether individuals consumed contaminated products after Wilkerson's offense of conviction, the Court finds that the causal link between Wilkerson's obstruction and any subsequent consumption of contaminated products would be too attenuated; the Court cannot find that if Wilkerson had not obstructed the FDA's investigation, the manufacturers and individuals still in possession of contaminated PCA products would not have distributed or consumed those products. The Court therefore finds that the victims who have submitted impact statements and who will testify at the sentencing hearing are not victims of Mary Wilkerson's federal offense, and, therefore, they will not be allowed to testify regarding Wilkerson's actions and their statements will not be considered by the Court for CVRA purposes in determining Wilkerson's sentence. Wilkerson's Motion to Exclude Victim Testimony from Sentencing (Doc. 460) is **GRANTED**.

In determining whether the victims at issue are victims of the Defendants' federal offenses for CVRA purposes, the Court does not make any findings regarding whether those victims are entitled to restitution under the Mandatory Victims' Restitution Act and whether they should be counted for sentencing guideline determinations. The Court intends to issue an order regarding relevant conduct and the number of victims for sentencing guideline range calculations in advance of the September 21, 2015 sentencing. The Parties, however,

should come to the hearing prepared to discuss whether restitution is mandatory as to Stewart and Michael Parnell, and how much, if any, should be ordered.

## IV. CONCLUSION

For the reasons stated herein, Stewart Parnell's Motion to Adopt (Doc. 451) is **GRANTED-IN-PART** and **DENIED-IN-PART** and his Motion for a New Trial, as adopted (Doc. 446) is **DENIED**. Stewart and Michael Parnell's Motion to Exclude Victim Testimony (Doc. 455) is also **DENIED**.

Wilkerson's Motion to Adopt (Doc. 460) and Motion to Exclude Victim Testimony from Sentencing (Doc. 460) are **GRANTED**. Wilkerson's Motion to Dismiss Count 73 of the Indictment or, in the Alternative, Motion for a New Trial (Doc. 446) is **DENIED.** The Court finds that Wilkerson's Motion (Doc. 446) is largely duplicative of other Motions and objections already pending before or denied by the Court. (*See, e.g.*, Docs. 445, 444, 443, 440, 439, 434, 287, 223.) Wilkerson and her counsel are **ORDERED** to refrain from filing further motions that reassert the same claims, issues, and/or arguments that have already been explicitly denied by the Court either as untimely or on the merits. Wilkerson will have the opportunity to appeal any and all of the Court's determinations during the course of this case after sentencing and entry of judgment.

**SO ORDERED**, this 18th day of September, 2015.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**